UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **MARK FULTZ**, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:22-cv-11876 |
| v. | ) |
| | ) |
| **BRIGHTLODGE, INC,** a Michigan corporation for profit, | ) Judge: |
| | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

Plaintiff, Mark Fultz, individually, by and through the undersigned counsel, Owen B. Dunn, Jr., hereby files this Complaint against Defendant, **BRIGHTLODGE, INC**, a Michigan corporation for profit, for injunctive relief, damages, attorneys' fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), alleging as follows:

## JURISDICTION AND VENUE

1. This action is brought by the Plaintiff, Mark Fultz, individually, and on behalf of individuals similarly situated, pursuant to the enforcement provision of the American with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12188(a), against the Defendant as delineated herein.

2. The Court has jurisdiction pursuant to the following statutes: 28 U.S.C. § 1331, which governs actions that arise from the Defendant's violations of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*; 28 U.S.C. § 1331, which gives the District Courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States; 28 U.S.C. § 1343(3) and (4), which gives District Courts jurisdiction over actions to secure civil rights extended by the United States government; and 28 U.S.C. §

1367, as Count II utilizes the same core of operative facts as Count I, and is therefore subject to supplemental jurisdiction.

3. Venue is proper in the Eastern District of Michigan as venue lies in the judicial district of the property *situs*. The Defendant's property and operations complained of by Plaintiff are located in this judicial district, where the business of public accommodation is conducted, including the acts complained of herein.

## PARTIES

4. Plaintiff, Mark Fultz ("Plaintiff" or "Mr. Fultz"), is a Florida resident, is *sui juris*, and qualifies as an individual with disability as defined by the ADA, 42 U.S.C. § 12102(2), 28 C.F.R. 36.104.

5. **BRIGHTLODGE, INC,** owns or operates a place of public accommodation, a hotel known as Courtyard By Marriott, is located at 7799 Conference Ctr. Dr., Brighton MI 48114 in Livingston County. Plaintiff has patronized and has been a guest at Defendant's hotel located therein as a place(s) of public accommodation.

6. Upon information and belief, the hotel owned and operated by Defendant is non-compliant with the remedial provisions of the ADA. As Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, Defendant is responsible for complying with the obligations of the ADA. Defendant's facility as a hotel, which constitutes a place of public accommodation, fails to comply with the ADA and its regulations, as also described further herein.

7. Upon information and belief, the hotel owned and operated by Defendant was originally built by the Defendant or its predecessor commencing in 2000 and granted permits for

occupancy in 2001 and is non-compliant with the remedial provisions of the ADA for newly designed and constructed or altered facilities. Full compliance with the implementing regulations of the ADA is required for this hotel unless it would be structurally impracticable in which case compliance is required to the extent that it is not structurally impracticable

8. Mr. Fultz is an individual who, as a result of a stroke, is paralyzed on the right side of his body. He uses a manual wheelchair and motorized scooter for mobility and can occasionally walk short distances with the use of a cane.

9. Raised in Michigan, Mr. Fultz has relatives including his son, daughter, grandchildren, and cousins in suburban Detroit. His son lives and works in Ann Arbor while his daughter resides between Ann Arbor and Detroit. Plaintiff frequents many establishments in the Livingston County region and has been a customer at the property that forms the basis of this lawsuit on multiple occasions.

10. Mr. Fultz patronized the Defendant's hotel while in town for a family birthday, also to visit with his grandchildren and to attend his grandson's hockey and baseball games. While staying as an overnight guest on October 16 through October 17, 2020 as well as most recently on October 7, 2021 at Defendant's place of public accommodation, Mr. Fultz encountered architectural barriers at the subject property that violate the ADA and its regulations. These barriers to access have endangered his safety and protected access to Defendant's place of public accommodation.

11. Completely independent of the personal desire to have access to this place of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester" for the purpose of discovering, encountering, and engaging discrimination against the disabled in

public accommodations. When acting as a "tester," Plaintiff employs a routine practice. Plaintiff personally visits the public accommodation; engages all of the barriers to access, or at least all of those that Plaintiff is able to access; and tests all of those barriers to access to determine whether and the extent to which they are illegal barriers to access; proceeds with legal action to enjoin such discrimination; and subsequently returns to the premises to verify its compliance or non-compliance with the ADA and to otherwise use the public accommodation as members of the able-bodied community are able to do. Independent of other visits, Plaintiff also intends to visit the premises annually to verify its compliance or non-compliance with the ADA, and its maintenance of the accessible features of the premises. In this instance, Plaintiff, in Plaintiff's individual capacity and as a "tester," visited the Facility, encountered barriers to access at the Facility, and engaged and tested those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access and the ADA violations set forth herein.

12. Plaintiff has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations contained in this complaint.  Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiff desires to visit the Defendant's place of business again on future occasions, not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the hotel and its amenities without fear of discrimination.

13. The Defendant has discriminated against the individual Plaintiff by denying him access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 *et seq.*

14. The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, *inter alia*, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

15. A preliminary inspection of the hotel owned by Defendant has shown that many violations of the ADA exist, whose remedy is readily achievable. These violations include, but are not limited to:

**Parking and Accessible Routes**

A. There is no marked access aisle in the vehicle pull-up space (passenger loading zone) at the hotel entrance, in violation of the ADA and section 503 of the 2010 Standards and 1991 ADAAG section 4.6.6 whose remedy is readily achievable.

B. Signs identifying van parking spaces do not contain the designation "van accessible" and signs are not mounted 60 inches minimum above the finish floor or ground surface measured to the bottom of the sign, in violation of the ADA and section 502.6 of the 2010 Standards and 1991 ADAAG section 4.6.4 whose remedy is readily achievable.

C. In the parking lot, the accessible parking space(s) do not meet the width requirements for an accessible parking stall, in violation of the ADA section 502.2 of the 2010 Standards and 1991 ADAAG section 4.6.3 whose remedy is readily achievable.

D. In the parking lot, the cross slopes of the access aisle greatly exceed 2%, in violation of the ADA section 502.4 of the 2010 Standards and 1991 ADAAG section 4.6.3 whose remedy is readily achievable.

E. In the parking lot, the running slopes of the accessible parking space greatly exceed 2%, in violation of ADA section 502.4 of the 2010 Standards and 1991 ADAAG section 4.6.3 whose remedy is readily achievable.

F. Ground surfaces located on the accessible route have cracks in excess of ½ inch and changes in level in excess of ¼ inch, in violation of the ADA section 302.3 of the 2010 Standards and 1991 ADAAG section 4.5.4 whose remedy is readily achievable.

G. Ground surfaces leading from the designated accessible parking access aisles located on the accessible route have changes in elevation in excess of ¼ inch, in violation of the ADA and section 303.2 of the 2010 Standards and 1991 ADAAG section 4.5.2 whose remedy is readily achievable.

H. On the accessible route (sidewalk leading to front entrance), the cross slopes exceed 2%, in violation of the ADA section 403.3 of the 2010 Standards and 1991 ADAAG section: 4.3.7.

**Mobility Accessible Guest Room No. 108**

I. In guest room #108, the maneuvering space at the front approach of the entry door does not have the appropriate space as identified by the ADA and section 4.13.6 & 404.2.4.1 of the 2010 Standards and 1991 ADAAG section 4.13.6 whose remedy is readily achievable.

J. In guest room #108, the door exceeds the maximum allowable opening force, in violation of the ADA and section 404.2.9 of the 2010 Standards and 1991 ADAAG section 4.13.11 whose remedy is readily achievable.

K. In guest room #108, the drape wands are too high and out of the maximum reach range for a side approach, in violation of the ADA and section 308.3.1 of the 2010 Standards whose remedy is readily achievable.

L. In guest room #108, the drape wands are not accessible because they require tight grasping, pinching, or twisting of the wrist, in violation of the ADA section 309.4 of the 2010 Standards and 1991 ADAAG section: 4.27.4 whose remedy is readily achievable.

M. In guest room #108, there is not sufficient maneuvering clearance to access all room amenities or to navigate the guest room, partly due to the placement of furniture, in violation of the ADA and section 304 of the 2010 Standards whose remedy is readily achievable.

N. In guest room #108, the closet bar, shelf, iron and ironing board are not accessible because there is not adequate clear floor space for an approach as well at the closet bar and shelf being in excess of permissible height about the finish floor, in violation of the ADA section 305.3 of the 2010 Standards and 1991 ADAAG section: 4.2.4.1.

O. In guest room #108, the height of the bed is lower than the recommended measurements, in violation of the ADA and the 2010 Standards for Accessible Designs in Places of Lodging whose remedy is readily achievable.

**Lobby Restrooms**

P. In the men's public restroom, the door exceeds the maximum allowable opening force, in violation of the ADA and section 404.2.9 of the 2010 Standards and 1991 ADAAG section 4.13.11 whose remedy is readily achievable.

Q. In the men's public restroom, the toilet compartment door is not self-closing and does not have pulls on both sides in violation of the ADA section 604.8.1.2 of the 2010 Standards and the door latch requires tight grasping, pinching, or twisting of the wrist, in violation of the ADA section 309.4 of the 2010 Standards and 1991 ADAAG section: 4.27.4 whose remedy is readily achievable.

R. In the men's public restroom toilet compartment, the coat hook is mounted too high, in violation of the ADA section 308.2.1 of the 2010 Standards whose remedy is readily achievable.

S. In the men's public restroom lavatory, the toilet seat is above the maximum height, in violation of the ADA section 604.9.3 of the 2010 Standards and 1991 ADAAG section 4.18.2 whose remedy is readily achievable.

T. In the men's public restroom toilet stall, the flush handle is located on the wrong side of the toilet, in violation of the ADA and section 604.6 2010 Standards whose remedy is readily achievable.

U. In the men's public restroom, the paper towel dispenser is obstructed and mounted to high above the finish floor to its operable parts, in violation of the ADA and sections 305.5 and 308.2.1 of the 2010 Standards whose remedy is readily achievable.

V. In the men's public restroom, the paper towel dispenser is out of the maximum allowable reach range for a side approach, in violation of the ADA and section 308.3.1 of the 2010 Standards whose remedy is readily achievable.

W.  Upon information and belief substantially similar barriers to handicap access exist in the women's lobby restroom facilities, in violation of the ADA whose remedy is readily achievable.

**ACCESS TO GOODS AND SERVICES**

X.  In the lobby, the computer station is not accessible, in violation of the ADA section 902 of the 2010 Standards whose remedy is readily achievable.

Y.  At the registration front desk there is not counter surface that is 36 inches long minimum and 36 inches high maximum above the finish floor provided. Failure to maintain the accessible features of the registration counter is a violation of the ADA and the Compliance Standards Guidelines of the 2010 Standards and 1991 ADAAG Compliance Standards whose remedy is readily achievable.

**Pool Area**

AA.  At the pool entrance, the door exceeds the maximum allowable opening force, in violation of the ADA and section 404.2.9 of the 2010 Standards and 1991 ADAAG section 4.13.11 whose remedy is readily achievable.

**Type and Number of Designated Accessible Guestrooms**

BB.  The hotel's designated accessible guestrooms are not disbursed among the various classes of guestrooms, whereas the property offers guest rooms and suites with separate living area, parlor, whirlpool, sofa bed.  These offers varying square footage and amenities available only to able bodied guests. However, guests who require accessible accommodations are restricted to fewer room classes and guestroom amenities, whereas

    able-bodied patrons and guests have access to reserve and stay at the full range of room classes. This is in violation of the ADA and its remedy is readily achievable.

CC. Upon information and belief, the BRIGHTLODGE INC COURTYARD BY MARRIOTT has a legally insufficient total number of hotel guestrooms fitted with mobility accessible features. Whereas, for a property with 110 guestrooms such as this Courtyard By Marriott, there must be a minimum of 5 mobility accessible guestrooms without a roll-in shower and a minimum of 2 of mobility accessible guestrooms with a roll-in shower, totaling 7 designated mobility accessible guestrooms.

DD. Upon information and belief, Mark Fultz believes substantially similar barriers to handicap access for the mobility impaired exist in all guestrooms that are designated as mobility accessible guestrooms throughout the hotel (not just room 108). Including the other roll-in shower fitted mobility accessible guestrooms and bathtub fitted mobility accessible guestrooms.

16. The discriminatory violations described in Paragraph 15 by Defendant are not an exclusive list of the ADA violations at the place of public accommodation owned and operated by Defendant. Plaintiff requires further inspection of the Defendant's place of public accommodation and facilities in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access. The Plaintiff has been denied access to Defendant's accommodations; benefit of services; activities; and has otherwise been discriminated against and damaged by the Defendant, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein. In order to remedy this discriminatory situation, the Plaintiff

requires an inspection of the Defendant's place of public accommodation, facilities and operations in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITES ACT

17. Plaintiff restates the allegations of ¶¶1-16 as if fully rewritten here.

18. The facility at issue, as owned by BRIGHTLODGE INC. is a public accommodation and service establishment, and as such, must be, but is not, in compliance with the Americans with Disabilities Act ("ADA") or Americans with Disabilities Act Accessibility Guidelines ("ADAAG").

19. Plaintiff was unlawfully denied full and equal enjoyment of the goods, services, facilities, privileges, and advantages of the property on the basis of disability due to Defendant's failure to comply with Title III of the Americans with Disabilities Act and its accompanying regulations, as prohibited by 42 U.S.C. § 12182, et seq. Defendant will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant is compelled to remove all physical barriers that exist at the facility, including those specifically set forth herein, and make the facility accessible to and usable by persons with disabilities, including Plaintiff.

20. The Plaintiff, and others similarly-situated, is presently without adequate remedy at law and is damaged by irreparable harm. Plaintiff reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions, and ADA violations that exist at the hotel, including those set forth herein.

21. Pursuant to 42 U.S.C. §12187, Plaintiff requests that the Court issue an injunction requiring Defendant to come into full compliance with the implementing regulations of the ADA as is required for this hotel unless it would be structurally impracticable or at minimum to make such readily achievable alterations as are legally required to provide full and equal enjoyment of the goods, services, facilities, privileges, and advantages on its property to disabled persons. In connection with that relief, Plaintiff request reasonable attorney's fees and costs of maintaining this action.

## COUNT II
**VIOLATION OF MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**
**M.C.L. § 37.1301** *et seq*.

22. Plaintiff restates the allegations of ¶¶1-21 as if fully rewritten here.

22. Defendant **BRIGHTLODGE INC** hotel is a "place[s] of public accommodation" pursuant to M.C.L §37.1301(a).

23. Defendant committed an unlawful act pursuant to M.C.L §37.1302(a) by denying Plaintiff the full enjoyment of its goods, services, accommodations, advantages, facilities, or privileges. Whereas, and in particular, the Defendant has failed to create and provide safe and compliant designated accessible parking and accessible routes. This risks Mr. Fultz and others' safety.  Furthermore, multiple other features are unavailable to Mr. Fultz and others with mobility impairment.

24. Pursuant to M.C.L §37.1606, Plaintiff is entitled to compensatory and exemplary damages,  attorney's fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendant to allow full and equal enjoyment of its goods, services, facilities, privileges, and advantages to disabled persons.

**WHEREFORE**, Plaintiff demands,

For **COUNT I**, an injunction requiring Defendant to make all alterations as are required for this hotel unless it would be structurally impracticable or otherwise all readily achievable alterations and institute policies and procedures to allow full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons, and the reasonable attorney's fees and costs of maintaining this action; and,

For **COUNT II**, compensatory and exemplary damages, attorney's fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendant to allow full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons.

Respectfully Submitted,

*Counsel for Plaintiff:*

/s/ Owen B Dunn Jr.
Owen B. Dunn, Jr., Esq. (p66315)
Law Offices of Owen Dunn, Jr.
The Ottawa Hills Shopping Center
4334 W. Central Ave., Suite 222
Toledo, OH 43615
(419) 241-9661 – Phone
Monroe, MI (734) 240-0848
(419) 241-9737 - Facsimile
dunnlawoffice@sbcglobal.net